IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CLAUDIETTE H. MORELAND,**                    3:11-CV- 01528 RE

Plaintiff,                    **OPINION AND ORDER**

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

Defendant.

**REDDEN**, Judge:

Plaintiff Claudiette Moreland ("Moreland") brings this action to obtain judicial review of

a final decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claim for Supplemental Security Income ("SSI") benefits. For the reasons set forth

below, the decision of the Commissioner is affirmed and this matter is dismissed.

## BACKGROUND

Born in 1957, Moreland obtained her GED, and has no past relevant work. In June 2009,

Moreland filed an application for SSI benefits, alleging disability since August 1, 2000, due to asthma, bronchitis, 'knees,' migraine headaches, and sleep apnea. Tr 142. Her application was denied initially and upon reconsideration. After a May 2011 hearing, an Administrative Law Judge ("ALJ") found her not disabled in an opinion issued in June 2011. Moreland's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ'S DECISION

The ALJ found Moreland had the medically determinable severe impairments of asthma, headaches, depression, adjustment disorder, and osteoarthritis of the right knee. Tr. 15.

The ALJ determined that Moreland retained the residual functional capacity ("RFC") to perform a reduced range of light work. Tr. 17-20.

The ALJ found that Moreland had no past relevant work, but relying on the testimony of a vocational expert ("VE") found that there were jobs that Moreland could perform. Tr. 20-21.

The medical records accurately set out Moreland's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Moreland contends that the ALJ erred by: (1) finding her not fully credible; (2) improperly weighing the testimony of health practitioners; and (3) presenting an inaccurate hypothetical question to the Vocational Expert ("VE").

## I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995).

However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,*

157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant

is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear

and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be

substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th

Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient

basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246

F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific

to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.

*Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must

perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v.*

*Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective
> symptoms "must produce objective medical evidence of an underlying
> impairment which could reasonably be expected to produce the pain or other
> symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423
> (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes
> only two requirements on the claimant: (l) she must produce objective
> medical evidence of an impairment or impairments; and (2) she must
> show that the impairment or combination of impairments *could*
> *reasonably be expected to* (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.

Moreland testified that she is unable to work because:

> My asthma is bothering me a lot and then it's like I can't walk
> too far, you know, I've been having problems, mental problems
> lately. These migraine headaches really bad where I have to be in
> the dark with no light and I can't lift things too, you know, my
> back has been bothering me. Just different little things like that.
> I just can't sit long. No more than an hour, maybe an hour and a
> half or standing–I can't stand too long, you know....

Tr. 32.

Morland testified that her mental problems began before 2007, and that she forgets things.

Tr. 33. The back pain started two to two and a half years ago, and the migraines got bad in the

last six years. She has migraines four to five times a month, and the medication "is not really

helping...." *Id.* Moreland testified that her asthma is triggered by perfumes, bleaches, and

cleaning agents.

Moreland watches her eight grandchildren, ranging in age from two to 14, though many

of them are old enough to take care of themselves. Tr. 40. She loses her train of thought. Tr. 43.

Moreland thinks that she has arthritis in her hands, and it takes a little while to pick things up.

Tr. 45. She has had her right knee replaced, and testified that she may have to have the left knee

replaced. Tr. 46. She does not do much socializing. Tr. 50.

Moreland testified that she can sit for no more than two hours before she has to change

position. Tr. 51. She can stand for no longer than an hour. Tr. 52. Moreland sees Katrina

McAlexander, N.P., once or twice a month for mental health counseling. *Id.*

The ALJ found that Moreland's allegations as to the intensity, persistence and limiting

effects of her symptoms not credible to the extent that they are inconsistent with the RFC. Tr.

18. The ALJ stated:

> Although the claimant described daily activities which were fairly limited, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak evidence and other factors ....For example, the claimant testified that she helps supervise her eight grandchildren. The claimant reported that she does not have time for hobbies. She did not describe a physical or mental inability to perform hobbies.

*Id.*

The ALJ stated that the claimant's work history raises questions about her credibility. Moreland testified that she has always worked, primarily as a self-employed babysitter until 2001, but her earnings record shows a minimal amount of work. The ALJ noted that the sparse work history suggests either a lack of motivation or a failure to report earnings. This is a specific and legitimate reason to find Moreland not fully credible.

The ALJ cited Moreland's function report, in which she reported that she prepares meals, watches television, shops, does laundry and ironing, and goes for walks. Tr. 16, 166-68. Moreland testified that she cooks simple meals and occasionally goes to church on Sundays. Tr. 46. Moreland's daily activities contradict her claim that her impairments are disabling.

Finally, the ALJ found that Moreland's complaints were inconsistent with the medical evidence. Moreland's asthma is generally well controlled. Tr. 197. Moreland went to the emergency room in November 2009 for a cough because she could not find her home nebulizer. She received one nebulizer treatment, and had clear lungs with no wheezing. Tr. 263. A chest x-ray was normal.

As to her knees, Moreland had her right knee replaced in August 2007. Tr. 203. One

year later, an x-ray showed good fixation and alignment. Tr. 213. Moreland complained of left knee pain in August 2008, but an x-ray was normal. Tr. 212. She was referred to the Legacy Bone & Joint Clinic in September 2009 but examination of the left knee was normal and there was no significant underlying degenerative joint disease. Tr. 251. David Noall, M.D., found that the [e]tiology of her current pain is not totally clear." *Id.*

The ALJ noted Moreland's complaints of headaches in August 2009, improved by November with verapamil, vicodin, and zofran. Tr. 18, 242. A brain MRI showed no specific acute abnormalities, although there were multiple white matter spots showing possible demyelinating disease. Tr. 252. In January 2010, Moreland's treating physician, Judith Becher, M.D., opined that Moreland had tension, not migraine headaches. Tr. 310.

Regarding depression and adjustment disorders, the record contains no significant treatment or complaints that reflect Moreland's testimony. In September 2009 Moreland to Dr. Becher that she was depressed over her partner's cheating, but a depression screen was negative. Tr. 245-46. There are no other complaints of depression in the record.

Moreland argues that the ALJ failed to review the credibility factors set out in SSR 96-7p, but does not point out how the ALJ violated SSR 96-7p. The ALJ considered Moreland's daily activities, and discussed her pain and the medications that improved her symptoms. The ALJ summarized the medical record, and reasonably found that Moreland experienced some of the symptoms she described, but that the intensity, persistence, and limiting effects were not as great as she claimed. Tr. 18-19. The ALJ articulated clear and convincing reasons to find Moreland less than fully credible.

/ / /

6 - OPINION AND ORDER

## II. Medical Source Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A. Judith Becher, M.D.

Dr. Becher was Moreland's treating physician from August 2007 through at least June 2011. In April 2011, Dr. Becher completed a form prepared by counsel in which she listed diagnoses of cervical stenosis, knee arthritis, migraines, and depression. Tr. 335. She opined that Moreland's symptoms would frequently to very frequently interfere with attention and concentration. Tr. 336. Dr. Becher opined that Moreland could stand less than two hours in an eight-hour workday; sit two hours at a time; could not twist, stoop, crouch, or climb stairs, and could not be exposed to cold or fumes. Tr. 337-38. Dr. Becher concluded that Moreland would miss four or more days of work each month and that her ability to work eight hours a day and maintain a normal work pace was poor. Tr. 335, 340.

Dr. Becher's opinion was contradicted by the State agency non-examining physicians. Tr. 220-33. The ALJ noted that Dr. Becher's treatment records contained little or no objective

evidence in support of the assessed limitations. Tr. 19. The record does not contain an MRI or

other basis for the diagnosis of cervical stenosis. There is no record of Moreland complaining of

back pain. Dr. Becher noted in August 2007, that Moreland "walks without pain." Tr. 203. Dr.

Noall was unable to identify the source of Moreland's left knee pain. Tr. 251.

The ALJ noted that Dr. Becher opined in August 2009 that Moreland was capable of

working at a low stress job. Tr. 18, 325. As discussed above, Dr. Becher noted improved

headaches with medication, and questioned whether they were tension in origin. Tr. 242-43,

310-11. Dr. Becher diagnosed adjustment disorder, but not depression, and the record reflects

only one complaint of depression. Tr. 246-47.

The ALJ concluded that Dr. Becher largely based her opinion on Moreland's subjective

complaints. Tr. 19. This opinion may be properly discounted where the record supports the

ALJ's determination that the claimant is not fully credible. *Tonapetyan v. Halter,* 242 F.3d 1144,

1149 (9th Cri. 2001). Dr. Becher's treatment notes show largely normal physical examinations

and findings. The ALJ offered clear and convincing reasons to discount Dr. Becher's opinion.

## B. Katrina McAlexander, P.M.H.N.P.

The ALJ must consider opinions from "other sources" to determine the severity of a

claimant's impairments and how they affect his or her ability to work. SSR 06-03p.

In December 2010, Ms. McAlexander completed a form provided by counsel in which

she stated that she had been treating Moreland for three years, and that the diagnosis was

depression and psychosis. Tr. 316. Ms. McAlexander assessed a current GAF of 35, and stated

that the highest GAF in the past year was 45. She stated that Moreland's stamina, pace,

drowsiness, and cognitive problems would limit her ability to work, including missing four or

more workdays each month. Tr. 316, 320. Ms. McAlexander checked boxes to indicate that Moreland was extremely limited in 15 out of 16 mental abilities and aptitudes needed for unskilled work. Tr. 320-21. Ms. McAlexander opined that Moreland had marked limitations in social functioning and daily activities, and "constant" limitations in concentration, persistence and pace and in episodes of decompensation. Tr. 322. None of Ms. McAlexander's treatment notes are in the record.

The ALJ gave Ms. McAlexander's opinion "very little weight," reasoning that the record contained little evidence of psychological diagnosis or treatment. Tr. 20. The ALJ noted that the medical evidence, and Moreland's own testimony, do not support the extensive extreme limitations endorsed by Ms. McAlexander. The ALJ properly noted that Ms. McAlexander's report was based on Moreland's discredited subjective complaints.

The ALJ properly evaluated the medical source opinions and substantial evidence supports his decision to discount Dr. Becher and Ms. McAlexander's opinions.

### III. Duty to Develop the Record

The ALJ in a social security case has an independent " 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Smolen,* 80 F.3d at 1288 (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir. 1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288.

The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998).

Moreland argues that the ALJ erred by failing to order a psychological consultative exam. However, it is the claimant's burden to provide evidence of the claimed disability. 42 U.S.C.§ 423(d)(5). The evidence is not ambiguous- there is no evidence of mental impairments or psychosis except the form prepared by counsel. The ALJ properly found this evidence deserved little weight as it is contradicted by the vast majority of the medical record and Moreland's own testimony.

Similarly, Moreland argues that the ALJ erred by failing to further explore Moreland's cervical stenosis, abnormal brain MRI, and left knee issues. The evidence is not ambiguous. There is no evidence of cervical stenosis. The brain MRI did not detect any acute intracranial abnormalities. Tr. 252. The x-ray of Moreland's left knee showed only minimal degenerative changes, and Dr. Noall was unable to determine the source of Moreland's alleged pain. Tr. 251. The evidence provided an adequate basis for the ALJ's determination.

## IV. Adequacy of the Hypothetical Question

Social Security Rule 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's

exertional and nonexertional capacity. *Id.* at ✳5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairments. Here, the ALJ found that the claimant retained the RFC for light work, with occasional climbing, stooping, kneeling , crouching, and crawling. She can frequently balance, but should avoid concentrated exposure to temperature extremes and fumes, odors, dusts, and gases. She can perform only unskilled work. Tr. 17.

Plaintiff argues that the ALJ failed to "assess" and "discuss" whether Moreland is capable of working on a regular and continuing basis for 8 hours a day, 5 days a week. However, an RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e); *see also* SSR 96-8p, *available at* 1996 WL 374184, at ✳ 1 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule.").

Plaintiff contends that the ALJ's step 3 finding that she has moderate difficulties in concentration was not included in the RFC. However, the limitations identified by the ALJ at step two in the "paragraph B" criteria are not an RFC assessment, but "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. Tr. 17 (citing SSR 96-8p. Moreover, the plaintiff fails to point to any credible medical evidence supporting her alleged impairments in concentration, persistence, and pace. Dr. Becher said her symptoms would impair her concentration, but that she was capable of low stress work. Tr. 337. 327. Ms. McAlexander's opinion was properly discounted by the ALJ. The ALJ based his RFC on a consideration of the entire record and the determination of Moreland's RFC is supported by substantial evidence.

11  - OPINION AND ORDER

**V. Substantial Evidence Support's the ALJ's Step Five Determination**

For the reasons set out above, the ALJ's hypothetical question to the VE accurately reflected the limitations in the RFC finding, and therefore the ALJ correctly relied on the VE's response to that question in concluding that Moreland was not disabled at step five.

## CONCLUSION

For the above reasons, the Commissioner's decision is affirmed and this matter is dismissed.

IT IS SO ORDERED.

Dated this _20_ day of November, 2012.

_____
JAMES A. REDDEN
United States District Judge